

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building

One Saint Andrew's Plaza
New York, New York  10007

October 1, 2007

BY ELECTRONIC FILING & FACSIMILE

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

       Re:  *United States* v. *Raul Depaz*,
          06 Cr. 685 (KMK)

Dear Judge Karas:

    Sentencing in this matter is currently scheduled for October 3, 2007.  The Government respectfully submits this letter in response to the defendant's September 28, 2007, sentencing submission ("Defendant's Submission"), in which the defendant requests a sentence below the United States Sentencing Guidelines ("Sentencing Guidelines" or "Guidelines") range of 87 to 108 months as calculated and recommended by the United States Probation Department ("Probation") in its Presentence Investigation Report (the "PSR") dated September 7, 2007.

    For the reasons stated below, a Guidelines sentence would be reasonable and appropriate in this case, and therefore the defendant's request should be denied.

**BACKGROUND**

    On June 28, 2007, the defendant pled guilty, with the benefit of a plea agreement, to the above-referenced Indictment, charging the defendant with conspiracy to distribute, or possess with intent to distribute, 1 kilogram or more of heroin in violation of Title 21, United States Code, Section 846.  (PSR ¶ 2 and 3.)

    The offense of conviction carries a maximum penalty of life imprisonment and a mandatory minimum penalty of 10 years'

imprisonment.[1]  (PSR ¶ 68.)  Probation has determined that the
defendant's Guidelines range is 87 months to 108 months, based on
a total offense level of 29 and a Criminal History Category of I.
(PSR ¶ 68.)  The Probation Office recommends a sentence of 87
months' imprisonment, at the bottom of the Guidelines range.
(*See* PSR at 14, Sentencing Recommendation.)

## DISCUSSION

**A.    The Court Should Strongly Consider the Guidelines
        Recommendation in this Case.**

Although *United States* v. *Booker*, 543 U.S. 220 (2005), held
that the Guidelines are no longer mandatory, it held also that
the Guidelines remain in place and that district courts must
"consult" the Guidelines and "take them into account" when
sentencing.  *Id.* at 264.  The Second Circuit has "emphasized that
*Booker* did not signal a return to wholly discretionary
sentencing."  *United States* v. *Rattoballi*, 452 F.3d 127, 132 (2d
Cir. 2006); *see United States* v. *Crosby*, 397 F.3d 103, 113 (2d
Cir. 2005) ("[I]t would be a mistake to think that, after
*Booker/Fanfan*, district judges may return to the sentencing
regime that existed before 1987 and exercise unfettered
discretion to select any sentence within the applicable statutory
maximum and minimum.").

The Second Circuit has commented on the considerable weight
that the Guidelines warrant, relative to the other factors under
Section 3553(a).  "[T]he guidelines cannot be called just another
factor in the statutory list, 18 U.S.C. § 3553(a), because they
are the only integration of the multiple factors and, with
important exceptions, their calculations were based upon the
actual sentences of many judges."  *Rattoballi*, 452 F.3d at 133
(quoting *United States* v. *Jimenez-Beltre*, 440 F.3d 514, 518 (1st
Cir. 2006) (*en banc*) (citations and internal quotations omitted).
The Court noted that "the Sentencing Commission is an expert
agency whose statutory charge mirrors the § 3553(a) factors that
the district courts are required to consider."  *Id.*

Indeed, the Supreme Court's recent decision in *United States*
v. *Rita*, No. 06-5754, 2007 WL 1772146 (June 21, 2007), only

---

[1] Pursuant to the provisions of 18 U.S.C. § 3553(f) the
defendant meets the criteria set forth to qualify for safety-
valve relief.  (*See* PSR ¶ 69.)

underscores the importance of the Guidelines in determining an appropriate sentence. In that decision, the Supreme Court found that on appellate review, a sentence imposed within a properly calculated Guidelines range may be presumed to be a reasonable sentence. *Id*. at *3. The Court noted that such a presumption was non-binding, and did not run the risk of "lead[ing] appeals courts to grant greater factfinding leeway to an expert agency [*i.e.*, the Sentencing Commission] than to a district judge." *Id*. at *6. Rather, the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Id*. (emphasis in original). Moreover, "[t]he Guidelines as written reflect the fact that the Sentencing Commission examined tens or thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill th[e] statutory mandate" of Section 3553(a), and therefore, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id*. at *8. Accordingly, "[a]n individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission's judgment in general." *Id*.

The Second Circuit in *Rattoballi* has also cautioned that "on appellate review, [it] will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflect attributes common to all defendants. Disparate sentences prompted the passage of the Sentencing Reform Act and remain its principal concern." *Rattoballi*, 452 F.3d at 133-34. Indeed, the Court has stated that the Guidelines should serve as "a benchmark or a point of reference or departure," and that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States* v. *Fernandez*, 443 F.3d 19, 27-28 (2d Cir. 2006) (citations omitted). Indeed, the Second Circuit affirmed these principles in *United States* v. *Castillo*, 460 F.3d 337 (2d Cir. 2006), where it held that a district court may not impose a below-the-Guidelines sentence based on the district court's policy disagreement with the Guidelines' sentencing ratio for cocaine powder and crack cocaine. *Castillo*, 460 F.3d at 355 ("Nothing in *Booker* specifically authorizes district judges to rewrite different Guidelines with which they generally disagree, which is effectively what district judges do when they calculate a sentence with a 20:1 or 10:1 ratio instead of the 100:1 ratio in

the drug sentencing table.").

Here, the Court should strongly consider the Guidelines range of 87 to 108 months in imposing sentence.

**B.    The Factors Listed Under 18 U.S.C. Section 3553(a) Require A Sentence Within The Recommended Guidelines Range Of The PSR**

In sentencing defendants, courts must consider not only the Guidelines but also the other factors set forth in 18 U.S.C. Section 3553(a).  Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must take into account at sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range by the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. Section 3553(a).

As stated *supra*, Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) . . ."  That subparagraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Although constrained by the plea agreement from making arguments for a downward departure under the Guidelines, the defendant nonetheless makes Guidelines-type arguments in asking

-4-

the Court to consider a non-Guideline sentence due to the nature and circumstances of the defendant's involvement in the instant case, as well as the fact that the defendant will be deported following the completion of his sentence and the fact that he has been in the Metropolitan Correctional Center ("MCC") for the last 14 months. (*See* Def.'s Submission at 8.)

As an initial matter, there can be no real dispute that the defendant's offense is an extremely serious crime, deserving of imprisonment to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment and deterrence.

The defendant admitted to participating in the distribution of illegal narcotics on three separate occasions. (*See* June 28, 2007, Guilty Plea Tr. at 21.) The defendant's arrest revolved around approximately 8.6 kilograms of mixtures and substances containing a detectable amount heroin that possessed a 90% purity level. Suffice it to say that in the streets of New York it is rare to find that quantity of heroin at that purity level. Heroin at that level of purity had the potential to be "cut" numerous times to create more heroin for distribution and exponentially expand the profit margin by a significantly higher amount of money. Therefore, the nature of the drugs involved in this case, heroin, along with the quantity and purity levels involved, requires that the Court sentence the defendant within the recommended Guidelines range.

### 1.    Minor Role

The defendant's argument that he played a minor role in the instant offense and thus should receive a non-Guideline sentence as a result should be rejected by the Court. As the Second Circuit has stated, "[c]ouriers are indispensable to the smuggling and delivery of drugs and their proceeds." *United States* v. *Garcia*, 920 F.2d 153, 155 (2d Cir. 1990)(upholding denial of minor role adjustment to courier who received $150 for single delivery of 1 kilogram of cocaine). In the context of Guidelines analysis, the Second Circuit and other courts have routinely upheld the denial of mitigating role adjustment to defendants who acted merely as brokers or couriers of relatively modest quantities of narcotics, so long as the defendant's role in the illegal venture was important to its success. *See, e.g.*, *United States* v. *Imtiaz*, 81 F.3d 262, 265 (2d Cir. 1996) (per curiam) (affirming denial of mitigating role adjustment to broker/courier in single, two-kilogram heroin transaction); *Garcia*, 920 F.2d at 154-55; *United States* v. *Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006) ("drug courier and facilitator" responsible for between 1.5 and 5 kilograms of methamphetamine

was properly denied minor role adjustment); *United States* v. *Zuleta*, 427 F.3d 1082, 1086 (8th Cir. 2005) (defendant who "acted as a courier on more than one occasion" properly denied role adjustment); *United States* v. *Gonzalez-Soberal*, 109 F.3d 64, 74 (1st Cir. 1997) ("even assuming, arguendo, that appellant was able to establish that he was merely a courier, he has failed to carry his burden of showing that he is entitled to a downward adjustment").  The defendant admitted that he was involved in the distribution of narcotics on three separate occasions.  During his safety-valve proffer the defendant stated that he was paid as much as $1,000 to deliver the heroin.  Therefore, the defendant's invitation to the Court to make a Guideline departure, under the disguise of a Section 3553(a) argument, should be rejected.

## 2.    Deportation Following Completion of Sentence

The defendant asks the Court to consider the fact that he will in all likelihood be deported following the completion of his sentence in sentencing him.  In the event that the defendant is making an argument that his deportation will be additional punishment, this is an argument that has been rejected by the Second Circuit in both pre-*Booker* and post-*Booker* cases.  *See United States* v. *Restrepo*, 999 F.2d 640, 647 (2d Cir. 1993) ("the district court's reduction of the prison term in recognition of those hardships [caused by deportation] does not eliminate the hardships or make the effects less harsh; rather, it advances the day when deportation will occur."); *United States* v. *Wills*, 476 F.3d 103, 107 (2d Cir. 2007) ("Now, after *Booker*, *we reaffirm the reasoning* of *Restrepo* and apply it to Wills's non-Guidelines sentence, which was partly based on the purported 'additional punishment' of deportation.) (Emphasis added).

According to the defendant, the defendant's status as a deportable alien would make a lengthy term of imprisonment "a tremendous waste of government assets."  (Def.'s Submission at 8.)  This argument as a reason for a lenient non-Guideline sentence is without avail nor supported by any of the Section 3553(a) factors which the Court must consider in sentencing the defendant.  Therefore, the Court should reject this argument.

Finally, the defendant requests the Court to consider his incarceration in the MCC as a basis for a non-Guideline sentence.  Again, this request is not supported by any of the Section 3553(a) factors which the Court must consider in sentencing the defendant.  In fact, a non-Guideline sentence based on this argument would have the undesired effect of creating an unwarranted disparity in contrast to Section 3553(a)(6)'s edict for a sentence "to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of
similar conduct."  The defendant provides no evidence to support
his blanket statement that being housed in the MCC is a harsher
experience than being housed in similar Bureau of Prisons ("BOP")
facilities with the same function as the MCC across the country.
The defendant lists all of the "hardships" associated with being
incarcerated in the MCC for committing a serious crime without
showing that these "hardships" reach a level not experienced by
other inmates at other BOP facilities across the country and thus
under Section 3553(a) requiring a non-Guideline sentence.  The
defendant's argument is without merit and is curtailed by the
unwarranted disparity it would create if it serves as the basis
for a non-Guideline sentence.


## CONCLUSION

        For all the foregoing reasons, the Government respectfully
requests that the Court impose a sentence within the 87 to 108
month range provided for by the Guidelines.


                        Respectfully submitted,

                        MICHAEL J. GARCIA
                        United States Attorney


                    By: _____/s/_____
                        Loyaan A. Egal
                        Assistant United States Attorney
                        Telephone: (212) 637-2205



cc:  Ellyn I. Bank, Esq. (*via* ECF and facsimile)